*In re* APPLICATION OF THE COUNTY COLLECTOR FOR DELINQUENT TAXES, FOR AT LEAST FIVE YEARS PRIOR TO 1987 (J & J Partnership, Petitioner-Appellee, v. Laborer's Local 703, Respondent-Appellant).

Fourth District   No. 4—91—0534

Opinion filed February 20, 1992.

David A. Fernandes, of Johnson, Ryan & Fernandes, of Urbana, for appellant.

Stephen J. LeSeuer, of Keller & LeSeuer, of Champaign, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

This dispute involves a certain tract of real property, located in Champaign County, owned by respondent Laborer's International Union Local No. 703 (Local 703), and purchased at a scavenger tax sale on May 16, 1988, by petitioner J & J Partnership (J&J). (See Ill. Rev. Stat. 1987, ch. 120, par. 716a.) On October 20, 1988, J&J filed a petition for issuance of a tax deed, and an amended petition was filed on December 7, 1989. The court denied a motion by Local 703 to dismiss the petition and, on March 22, 1991, entered an opinion and judgment which ordered the tax deed be issued. Local 703 has appealed. We reverse.

Little dispute exists as to the facts, most of which were agreed upon by the parties. The time within which Local 703 could redeem from the sale expired February 17, 1989. However, prior to that date, on January 20, 1989, the county clerk of Champaign County issued a certificate of redemption to Local 703 in regard to the property sold. Section 235a of the Revenue Act of 1939 (Act) requires that in order to redeem from a scavenger sale, an owner "shall" pay "an amount equal to all delinquent taxes." (Ill. Rev. Stat. 1987, ch. 120, par. 716a.) The term "taxes" includes penalties, interests or costs imposed. (Ill. Rev. Stat. 1987, ch. 120, par. 482(11).) Here, by virtue of a purported agreement between Local 703 and the State's Attorney, county clerk, and county collector (all of Champaign County), Local 703 was permitted to redeem by paying (1) the county the total unpaid taxes on the property ($6,768.86); and (2) to J&J (a) the sum of $70, the amount for which J&J made the pur-

chase, and (b) the sum of $308.56 for interest and court costs. This purported agreement permitted Local 703 to redeem without paying the county clerk the interest and penalties in a sum in excess of $8,000 which had accrued under the Act.

Local 703 relied upon the validity of the certificate of redemption as a defense to J&J's request for a tax deed. In J&J's amended petition for deed, it requested the trial court find the certificate of redemption was invalid. That court made that determination and then ordered the tax deed to issue. The propriety of that judgment depends almost entirely upon the validity of the certificate of redemption.

In ruling the redemption certificate was invalid, the trial court noted that section 216a of the Act lists the amount of interest that "shall" be paid to redeem property following tax sales. (Ill. Rev. Stat. 1989, ch. 120, par. 697a.) The trial court reasoned that, since the word "shall" is used, the Act requires the repayment of "[a]ny tax, special assessments or costs, interest or penalty imposed upon property" (Ill. Rev. Stat. 1989, ch. 120, par. 482(11)) in redeeming the property, and neither the county collector nor the State's Attorney, acting on behalf of the county, has the power to compromise the redemption amount owed. The court indicated this was so even though it considered that the tax purchaser, J&J, had been made whole by the payments made under the redemption agreement.

We conclude the State's Attorney has inherent power to compromise as to the sums which the county clerk is to receive to effectuate a redemption from a scavenger sale pursuant to section 235a of the Act. That is what the purported agreement did here. J&J received from the redemption all to which it would have been entitled even if Local 703 had paid the full statutory amount to the county clerk.

■ Our holding in regard to the inherent power of the State's Attorney begins with consideration of the cases of *Channahon Park District v. Bosworth* (1986), 145 Ill. App. 3d 820, 495 N.E.2d 1367, and *People ex rel. Thompson v. Anderson* (1983), 119 Ill. App. 3d 932, 457 N.E.2d 489. Both cases concern settlements between taxpayers and State's Attorneys as to amounts of taxes owed, after those taxes had been paid under protest and the taxpayers had filed objections to the applications of the county collector for judgments for the unpaid taxes on their properties. Then, and now, section 194a of the Act has stated when such objections are filed, the court must hold a conference between the State's Attorney and any objector, and "[i]f no agreement is reached at the conference," upon request of any party, set the matter for hearing. (Ill. Rev. Stat. 1989, ch. 120, par. 675a.) Section 194a then sets forth that any agreements reached between the objector and the

State's Attorney shall be filed with the court. No provision of the Act makes any similar recitation directly indicating a similar power of the State's Attorney to make settlements as to the amount to be paid to taxing units in order to redeem from a scavenger sale.

In *Bosworth*, the court explained that the State's Attorney, as the legal representative of all taxing units in the tax collecting process, "should and does have the power and the authority to bind the units represented unless it can be shown his representation was inadequate." *Bosworth*, 145 Ill. App. 3d at 825, 495 N.E.2d at 1370.

In *Anderson*, the court noted: "the State's Attorney is a part of the executive branch of government vested with the discretionary powers of an executive officer" and that "the executive powers of the State's Attorney as the legal representative of county government correspond to those of the Attorney General as the chief legal officer of the State." (*Anderson*, 119 Ill. App. 3d at 939, 457 N.E.2d at 493.) The court said:

> "In an action like the one before us, where multiple units of government have an interest in the outcome and where the county collector is the petitioning party, the public interest is best served by recognizing the authority of the State's Attorney to control this litigation on behalf of the collector, and all other taxing bodies affected. In other words, this was not an ordinary attorney-client situation, and the county board was not the 'client' in any event. The State's Attorney as an elected public official had a duty to conduct this litigation and had express authority to enter into a compromise agreement without the approval of any of the taxing units that might ultimately be affected. To the extent the trial court ruled to the contrary, that ruling was erroneous." *Anderson*, 119 Ill. App. 3d at 939, 457 N.E.2d at 493.

While the language of section 194a does recite a power in the State's Attorney to compromise the amount to be collected from objecting taxpayers, no direct grant of such authority is made in the Act. Rather, the language used more nearly indicates a recognition of the existence of that power. Consistent with such an interpretation is the language in *Bosworth* and *Anderson* which speaks of the powers of the State's Attorney in tax cases in expansive terms. Our conclusion that the State's Attorney has inherent power to compromise the amount to be paid to go to taxing units from a redemption from a scavenger is based upon the similarity between governmental interests involved in the proceeding giving rise to this litigation and those in *Bosworth* and *Anderson*.

The provisions of section 235a of the Act, which require an owner in redeeming to not only make payments to reimburse the tax sale pur-

chaser for the purchase price plus interest thereon but also to pay unpaid taxes with interest and costs to reimburse the taxing bodies through the county clerk, are unique. Ordinarily, to redeem after a judicial sale, the property owner only has to make whole the purchaser at the judicial sale. (See Ill. Rev. Stat. 1989, ch. 110, par. 12—122.) In *In re Application of Rosewell* (1983), 97 Ill. 2d 434, 444-45, 454 N.E.2d 997, 1001-02, the supreme court discussed the amendment to section 235a of the Act (Pub. Act 81—1076, eff. July 1, 1980 (1979 Ill. Laws 4091, 4093)), which required the full payment for redemption as described above. That court noted that prior to the amendment, as with other judicial sales, an owner could redeem by merely making the purchaser at the sale whole. The court explained that prior to the amendment, owners of blighted property often defaulted for several years and then had someone repurchase the property at a scavenger sale for a small price, destroying the tax lien and then reselling it to them. The supreme court described the amendment as one of two which were designed to close a loophole.

Allowing the State's Attorney to enter into agreement which could compromise the tax revenue available from redemptions from scavenger sales is just as logical as to allow him or her to compromise the revenue that may come in from the judgment which gives rise to a tax lien. In either case, the position of the taxing units may be enhanced by compromise. When the ability to get a judgment for unpaid taxes is in doubt, a compromised amount may be better than none. Here, the redemption amount obtained would certainly have been better for the taxing districts than if no redemption had taken place, J&J had obtained a deed, and all the taxing districts obtained was the $70 purchase price. The compromised amount obtained was also better for the taxing districts than would be the case if the sale was determined to have been in error. Ill. Rev. Stat. 1989, ch. 120, par. 741.

J&J maintains that the purported redemption agreement did not treat it fairly. It points out that in preparing to purchase and later purchasing at a tax sale, a buyer incurs time and expense not necessarily covered by that which the buyer receives on redemption. In *In re Application of Du Page County Collector* (1981), 98 Ill. App. 3d 950, 952, 424 N.E.2d 1204, 1207, in holding that an adverse possessor of land sold at a tax sale may redeem, the appellate court indicated that a tax purchaser who would otherwise have been entitled to a deed is not injured by a liberal construction of the redemption law which deprives· him of that deed. Even more in point is the language of the supreme court in speaking of the position of a purchaser at a mortgage foreclosure sale, stating:

"[H]is right to the land is no higher or more sacred than to the redemption money, and the statute holds out no inducements for a speculation at a sheriff's sale, beyond the interest provided for the use of the purchase money." *Hruby v. Steinman* (1940), 374 Ill. 465, 470-71, 30 N.E.2d 7, 10.

A purpose of the previously described amendment (Pub. Act 81—1076, eff. July 1, 1980) to section 235a of the Act was to prevent redemptions which left unpaid taxes free from lien. (See 81st Ill. Gen. Assem., Senate Proceedings, June 27, 1979, at 163-64 (statements of Senator Rock) (third reading of House Bill 2767).) However, the larger purpose was to protect the revenue of the taxing units. The interpretation we have placed upon the power of the State's Attorney to compromise redemption payments to be made for the benefit of taxing units leaves defaulting owners without the right to clear properties without full payment of taxes while enabling the State's Attorney to make the best deal possible for the taxing units when that can be accomplished by compromise. In the process, the rights of scavenger sale purchasers are not thwarted, as they proceed understanding the substantial likelihood of redemption. We recognize that the tax sale purchaser has standing to seek the relief it requests, but we consider the nature of the damage to it only to the extent that it bears upon the reasonableness of our interpretation of the power of the State's Attorney.

■ The question of the power of the State's Attorney involved here is close, but we conclude that office indeed has the power we have attributed to it. We do not agree with J&J that even if the State's Attorney had the power to compromise which he purported to exercise here, J&J had a right to be consulted or heard before the certificate of redemption issued. The State's Attorney does not represent the tax purchaser. If the State's Attorney had the power to compromise the amount to be paid for redemption, which we hold he did, the tax purchaser did not have to be consulted.

Accordingly, we reverse the judgment of the circuit court ordering a tax deed to issue. This reversal encompasses a reversal of the ruling of the circuit court finding the certificate of redemption issued to Local 703 invalid.

Reversed.

McCULLOUGH and KNECHT, JJ., concur.